**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**EDWARD P. GRIFFIN-NOLAN,**

                                        **Plaintiff,**

            **v.**                                                    **5:04-CV-1453**
                                                                      **(FJS/GJD)**

**PROVIDENCE WASHINGTON INSURANCE**
**COMPANY and HOWARD BLUTE, in his Individual**
**Capacity as Manager for the Business Development**
**Executives at Washington Insurance Company,**

                                        **Defendants.**

_____

**APPEARANCES**                          **OF COUNSEL**

**CHAMBERLAIN, D'AMANDA,**               **MAIREAD E. CONNOR, ESQ.**
**OPPENHEIMER & GREENFIELD LLP**
The Galleries of Syracuse
440 South Warren Street
Suite 703
P.O. Box 939
Syracuse, New York 13201
Attorneys for Plaintiff

**CITY OF SYRACUSE CORPORATION**         **DAVID H. WALSH, IV, ESQ.**
**COUNSEL**
300 City Hall
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff's complaint asserts (1) a 42 U.S.C. § 1983 cause of action for false arrest and

denial of First Amendment rights against Defendants City of Syracuse ("City"), Mullen, and

Hennessey, alleging that Defendants arrested him for speaking to Defendant officers about their conduct in arresting a third-party; (2) a § 1983 cause of action for false arrest and denial of First Amendment rights against all Defendants, alleging that they arrested him because they believed he might file a complaint of police misconduct; (3) a § 1983 cause of action for failure to train against Defendant City, alleging that Defendant City acted with deliberate indifference in failing to train its officers with respect to what constitutes the crime of obstruction of justice and how to handle the public; (4) a § 1985(3) cause of action against all Defendants for conspiracy to deprive him of the equal protection of the law and of his equal privileges and immunities, alleging that Defendants conspired to so deprive him out of animus for his attempt to prevent them from injuring a third-person on the basis of that third-person's race or color; (5) a common law false arrest claim against all Defendants; (6) a common law false imprisonment claim against Defendants Mullen, Cecile, and City; (7) a common law malicious prosecution claim against all Defendants; (8) a common law libel claim against Defendant Hennessey, alleging that he made false statements in his Complaint Information; and (9) a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

Based upon these claims, Plaintiff seeks (1) declaratory relief with respect to all causes of action, (2) injunctive relief with respect to all causes of action other than those made pursuant to § 1983, (3) compensatory damages, (4) exemplary or punitive damages, and (5) costs, disbursements, and legal fees.

Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint

pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## II. BACKGROUND[2]

On the evening of December 16, 2003, Plaintiff was working as a licensed massage therapist at his booth in the Carousel Center mall.  *See* Dkt. No. 1 at ¶ 10.  Around 8:00 p.m. of that evening, he saw a "Hispanic man of color" ("Paredes") walking toward him and noticed a mall security officer pointing Paredes out to Defendants Hennessey and Mullen.  *See id.* at ¶ 11.  When Defendant Hennessey tried to stop Paredes by placing his hand on Paredes' chest, Paredes spat on the floor and continued shouting that he was going to kill someone.  *See id.* at ¶ 12.  Defendant Hennessey then took Paredes behind Plaintiff's booth, told him to show some respect, and smashed his back and head against a concrete pillar.  *See id.* at ¶¶ 13-14.  Paredes then either pushed or kicked at Defendant Hennessey, at which point they both tumbled and knocked over Plaintiff's booth.  *See id.* at ¶¶ 15-16.  With Paredes face-down on the floor, Defendant Hennessey placed his knee in Paredes' back and began punching him in the back.  *See id.* at ¶¶ 18-19.  Defendant Mullen then also placed his knee in Paredes' back and began punching him in the back and sides.  *See id.* at ¶ 21.  Defendant officers each hit Paredes six or more times after they had subdued him.  *See id.* at ¶ 22.

Plaintiff crouched by Defendant officers and told them that they had gone over the top and were out of control.  *See id.* at ¶ 24.  Defendant Mullen told Plaintiff to get back, and

---

[1] Defendants' motion to dismiss does not address Plaintiff's claim for attorney's fees pursuant to 42 U.S.C. § 1988.

[2] Given the procedural posture of this case, the Court assumes the truth of the allegations in Plaintiff's complaint.

Plaintiff complied. *See id.* at ¶¶ 26-27. After Defendant officers continued to punch Paredes in the back, Plaintiff again told them that they were over the top. *See id.* at ¶¶ 28-29. Defendant Mullen told Plaintiff that, if he did not stop, he would be arrested for Obstructing Governmental Administration. *See id.* at ¶ 30. Plaintiff stopped speaking to Defendant officers, and they pulled Paredes up and led him away. *See id.* at ¶¶ 31-32.

At approximately 9:00 p.m., Defendant Mullen returned to Plaintiff's booth with Defendant Cecile and a mall security guard. *See id.* at ¶ 33. Defendant Cecile told Plaintiff that he understood that Plaintiff had been involved in an incident earlier in the evening and asked Plaintiff to explain what happened. *See id.* at ¶ 34. As soon as Plaintiff began to explain, Defendant Cecile stopped him and asked him whether he understood that he could be arrested. *See id.* at ¶ 35. Defendant Cecile told Plaintiff that, at the time of the incident, it was Defendants Hennessey's and Mullen's call whether to arrest Plaintiff but that, if Plaintiff made a complaint, it would be his call whether to arrest Plaintiff. *See id.* at ¶ 37. After Plaintiff said that he was not sure how the complaint procedure worked, Defendant Cecile showed Plaintiff the patch on his shoulder and said, "'It's right here with me, right now.'" *See id.* at ¶¶ 38-39. Plaintiff told Defendant Cecile that he did not think that this was the only way to file a complaint. *See id.* at ¶ 40. Defendant Cecile then told Plaintiff that, if he filed a complaint, Defendant Cecile would take him down. *See id.* at ¶ 41. Next, Defendant Cecile told Defendant Mullen, "'He's not happy. We're going to get a complaint. Take him in,' or words to that effect." *See id.* at ¶ 42. When Plaintiff said that he had things at his booth that he could not leave unsecured, Defendant Cecile told him that he should have thought of that before. *See id.* at ¶ 44. Upon Defendant Cecile's direction, Defendant Mullen arrested Plaintiff for Obstructing Governmental

-4-

Administration by giving him an appearance ticket.  *See id.* at ¶¶ 45-46.

That same night, Defendant Hennessey submitted a complaint information affidavit in support of Plaintiff's arrest.  *See id.* at ¶ 47.  The affidavit contained a number of statements that were false and that Defendant Hennessey knew to be false when he made them.  *See id.* at ¶¶ 48-49.  Plaintiff's counsel filed a motion to dismiss the information for insufficiency.  *See id.* at ¶ 51.  On January 10, 2004, the Syracuse City Court dismissed the information in its entirety.  *See id.* at ¶ 52.[3]  In or about November 2004, Carousel Center management informed Plaintiff that he could not set up his booth during the holiday season because it was concerned about potential negative publicity arising from these incidents.  *See id.* at ¶ 53.

Plaintiff filed the instant action on December 15, 2004.  *See* Dkt. No. 1.

## III. DISCUSSION

**A.    Defendants' motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure**

Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff failed to serve them with summonses.  The docket sheet contains four affidavits of service that indicate that each Defendant was served with the summons and the complaint sometime between January 12, 2005, and January 26, 2005.  *See* Dkt. Nos. 5-8.  Perhaps these affidavits are mistaken; Plaintiff's counsel has filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel on February 8, 2005, one day after Defendants filed their motion to dismiss.  *See* Dkt. Nos. 9, 14 at ¶ 4.  Since

---

[3] It appears to the Court that this dismissal actually occurred on January 14, 2004, and was made pursuant to New York Criminal Practice Law § 170.40.  *See* Dkt. No. 9 at Pt. 5.

Defendants do not address insufficiency of service of process in their reply memorandum of law, the Court presumes that they were served summonses and are abandoning their motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  Regardless, both Local Rule 7.1(a)(2) and common sense dictate that a motion to dismiss for a failure to serve summonses requires a supporting affidavit, which Defendants have not provided.  *See* L.R. 7.1(a)(2). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

**B.      Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

### 1. Standard of review

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Hence, dismissal is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (quotation omitted).

### 2. Defendant City's liability for Plaintiff's § 1983 claims

A municipality may only be held liable under § 1983 when its policies or customs result in a plaintiff's constitutional injury.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  The existence of a policy or custom may be inferred when a plaintiff presents evidence that a "'municipality so failed to train its employees as to display a deliberate

indifference to the constitutional rights of those within its jurisdiction . . . .'" *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quotation and footnote omitted).  Contrary to some earlier Second Circuit cases, there is no heightened pleading requirement for claims of municipal liability.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-68 (1993) (rejecting contention that "plaintiff must do more than plead a single instance of misconduct" to state a claim for municipal liability); *contra Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citation omitted).  As the Supreme Court noted, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."  *Leatherman*, 507 U.S. at 168-69.

Plaintiff's complaint alleges that Defendant City has a policy or custom of threatening those who verbally challenge, or indicate the desire to file a complaint about, police misconduct with Obstructing Governmental Administration and that Defendant City has shown deliberate indifference in failing to train its police officers in how to handle the public while making arrests and failing to train its officers about what constitutes the crime of Obstructing Governmental Administration.  *See* Dkt. No. 1 at ¶¶ 55, 64, 71-73.  Plaintiff's allegations of municipal liability are directly related to his allegation of personal injury and, if shown to be true according to the evidence, might support a determination of municipal liability.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City for failure to adequately plead municipal liability.

### 3. Plaintiff's § 1983 and common law false arrest and false imprisonment claims
#### a. elements of false arrest and false imprisonment

"The elements of false arrest . . . under § 1983 are 'substantially the same' as the

elements under New York law." *Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2d Cir. 2003) (quotation

omitted).  The elements of false arrest and false imprisonment claims are identical: "'(1) the

defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged.'"  *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation

omitted).

     The central dispute between the parties is whether the issuance of an appearance ticket

constitutes the requisite confinement.

### b. common law false arrest and false imprisonment

     Every New York case of which the Court is aware that has considered whether the

issuance of an appearance ticket constitutes confinement has held that the issuance of an

appearance ticket, in and of itself, does not constitute confinement for purposes of a common law

false arrest or false imprisonment claim.  *See Du Chateau v. Metro-North Commuter R.R. Co.*,

253 A.D.2d 128, 129, 132 (1st Dep't 1999) (citations omitted) (police officer escorted plaintiff

from train, talked to him, and issued an appearance ticket); *Kramer v. Herrera*, 176 A.D.2d

1241, 1241 (4th Dep't 1991) (citations omitted); *Pozzanghera v. Anderson*, 136 A.D.2d 912, 913

(4th Dep't 1988) ("Plaintiff's sole contention is that he was detained by the service of an

appearance ticket.  This did not restrict plaintiff's freedom and, therefore, does not form a basis

for his wrongful arrest claim." (citation omitted)); *Pritchett v. State*, 61 A.D.2d 1110, 1110 (3d

Dep't 1978); *cf. Reinhart v. Jakubowski*, 239 A.D.2d 765, 766 (3d Dep't 1997) (issuance of

criminal summons requiring court appearance insufficient to support false arrest claim); *Vill. of*

*Ellenville v. Searles*, 235 A.D.2d 692, 693 (3d Dep't 1997) (brief traffic stop in order to serve

process did not constitute requisite confinement) (citations omitted).

Plaintiff contends, however, that his complaint alleges more than the mere issuance of an

appearance ticket.  Conduct that accompanies the issuance of an appearance ticket certainly can

constitute confinement for purposes of a false arrest or false imprisonment claim.  *See Wiggins v.*

*Metro-North Commuter R.R. Co.*, 228 A.D.2d 198, 198 (1st Dep't 1996) (police escorted

plaintiff off train, questioned him in a railroad police facility, and issued an appearance ticket).

Unfortunately, Plaintiff does not specify which of his allegations he believes show that

Defendants confined him.  The relevant allegations are:

> 33. Approximately one hour later, at about 9:00 p.m., Officer Mullen returned to Plaintiff's booth with [Sergeant Cecile] and a mall security guard.
> 34. Sergeant Cecile told Plaintiff that he understood he had been involved in an incident earlier and asked the Plaintiff what happened.
> 35. As the Plaintiff began to tell him, Sergeant Cecile interrupted Plaintiff and asked if Plaintiff understood that he could be arrested.
> 36. Plaintiff was quite surprised at this statement as he had complied with Officer Mullen's directive and had not interfered with Paredes' arrest or done anything unlawful.
> 37. Sergeant Cecile said that right then it was the officer's call, but if they were going to receive a complaint from the Plaintiff, it would be his call whether to arrest Plaintiff.
> 38. Plaintiff said that he was not sure how the complaint procedure worked.
> 39. Sergeant Cecile showed Plaintiff the patch on his shoulder and said, "It's right here with me, right now."
> 40. Plaintiff said that he did not think that was the only way to file a complaint.
> 41. Sergeant Cecile then told Plaintiff, "I'll tell you right now if you're filing a complaint, I'm taking you down," or words to that effect.
> 42. Sergeant Cecile told Officer Mullen, "He's not happy.  We're going to get a complaint.  Take him in," or words to that effect.
> 43. Plaintiff explained that he had expensive things in his booth that he could not leave unsecured.

44. Sergeant Cecile told Plaintiff that he should have thought of that before.

45. Sergeant Cecile told Officer Mullen to give Plaintiff an appearance ticket, which Officer Mullen did.

*See* Dkt. No. 1 at ¶¶ 33-45.  Although Plaintiff alleges that Defendant Cecile threatened to arrest him, the mere threat to arrest does not constitute confinement.  *See Blumenfield v. Harris*, 3 A.D.2d 219, 220 (1st Dep't 1957) (citations omitted), *aff'd* 3 N.Y.2d 905 (1957).[4]

Accepting all of Plaintiff's allegations as true and drawing every reasonable inference from them, the Court does not find that he has alleged that Defendants took any actions that would constitute confinement for purposes of a common law false arrest or false imprisonment claim.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim.

### c. § 1983 false arrest

The question of whether the issuance of an appearance ticket constitutes confinement for purposes of § 1983 is not so clear.  Defendants rely upon *Angel v. Kasson*, 581 F. Supp. 170, 177-78 (N.D.N.Y. 1983) ("[I]t [is] well settled that the issuance of such tickets under the provisions of N.Y. Crim. Proc. Law § 150.10 does not constitute an arrest." (citation and footnote omitted)).  Plaintiff, on the other hand, relies upon *Dorman v. Castro*, 214 F. Supp. 2d 299 (E.D.N.Y. 2002), which states that,

[a]lthough this is a close case, the Court finds that Plaintiffs were subject

---

[4] In articulating his first cause of action, Plaintiff alleges that "[i]n the course of arresting Plaintiff, plaintiff was not free to leave and was confined against his will at the Carousel Center." *See* Dkt. No. 1 at ¶ 58.  However, in light of the more specific allegations that Plaintiff made in his statement of facts, this allegation is too vague and conclusory to support a reasonable inference that Defendants confined him.

> to a "seizure" under the Fourth Amendment.  Plaintiffs claim that their
> liberty was restrained because "at the point when the Plaintiffs were
> informed that they were being issued a Summons" they "were not free to
> leave until the Plaintiffs had the Summons in hand."

*Id.* at 308 (quotation omitted).  *Dorman* goes on to note that "district courts in this circuit that

have analyzed *Murphy* [*v. Lynn*, 118 F.3d 938 (2d Cir. 1997)], however, have held that the mere

issuance of an appearance ticket, without any restraint on travel, is a sufficient restraint of liberty

to constitute a 'seizure' under the Fourth Amendment."  *Id.* (citing *Kirk v. Metropolitan Trans.*

*Auth.*, No. 99 CV 3787, 2001 WL 258605, *15 (S.D.N.Y. Mar. 14, 2001); *Kirton v. Hassel*, No.

96 CV 1371, 1998 WL 146701, *6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains*,

992 F. Supp. 652, 656 (S.D.N.Y. 1998)) (other citation omitted).[5]

    *Dorman* and all the supporting cases that it cites rely upon *Murphy*.  *Murphy*, applying

*Albright v. Oliver*, 510 U.S. 266 (1994), held that, in order for a plaintiff to establish a § 1983

malicious prosecution claim, he "must show . . . that the initiation or pendency of judicial

proceedings" resulted in a Fourth Amendment "seizure."  *Murphy*, 118 F.3d at 944.  The court

went on to hold that "[t]he liberty deprivations regulated by the Fourth Amendment are not

limited to physical detention."  *Id.* at 945.  Finally, the court, relying upon Justice Ginsburg's

solitary concurrence in *Albright*, held that

> while a state has the undoubted authority, in connection with a criminal
> proceeding, to restrict a properly accused citizen's constitutional right to
> travel outside of the state as a condition of his pretrial release, and *may
> order him to make periodic appearances*, such conditions are appropriately
> viewed as seizures within the meaning of the Fourth Amendment.

---

[5] Contrary to *Dorman*'s statement, two of the supporting cases it cites do not involve
appearance tickets and the third, *Kirk*, involves a desk appearance ticket that the defendant issued
after the plaintiff had been arrested and detained.  *Kirk*, 2001 WL 258605, *2-*4.

*Id.* at 946 (emphasis added).

Like *Murphy*, all three of the supporting cases that *Dorman* cites concern malicious prosecution claims.  There is certainly considerable similarity between the analysis of a § 1983 malicious prosecution claim and a § 1983 false arrest claim; both arise out of the Fourth Amendment's protection against unreasonable seizures.  However, *Murphy* does not expressly address false arrest claims.  Furthermore, there is reason to constrain the application of *Murphy* to the precise issues it addresses.  Judge Jacobs, dissenting in *Murphy*, after noting the majority's reliance upon Justice Ginsburg's solitary concurrence, pointed out that "[a] probable cause determination is required only for 'those suspects who suffer restraints on liberty *other* than the condition that they appear for trial.'"  *Id.* at 953, 955 (quoting *Gerstein [v. Pugh]*, 420 U.S. [103,] 125 n.26, 95 S. Ct. [854,] 869 n.26 [(1975)] (Judge Jacobs' emphasis)) (footnote omitted).

In *Sassower*, Judge Lowe noted the novelty of the *Murphy* holding and quoted Judge Jacobs' statement that "'strange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court.'"  *Sassower*, 992 F. Supp. at 655, 656 (quotation omitted).

Although in the context of a malicious prosecution claim *Murphy* would be controlling, given the tenuousness of its reasoning, the Court holds that the issuance of an appearance ticket does not, in and of itself, constitute confinement for purposes of a § 1983 false arrest or false imprisonment claim.  Furthermore, since the circumstances surrounding the issuance of the appearance ticket in this case do not present any alternative forms of the restraint of Plaintiff's liberty, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for

failure to state a claim.

### 4. Plaintiff's § 1983 First Amendment claims

Second Circuit First Amendment retaliation case law is, to put it mildly, confusing.

There are at least three formulations of the elements of a First Amendment retaliation claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) ((1) protected speech or conduct, (2) the defendant's adverse action against the plaintiff, and (3) "'a causal connection between the protected speech and the adverse action'" (quotation omitted)); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ((1) conduct that the First Amendment protects that (2) prompts or substantially causes the defendant's action (citations omitted)); *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ((1) protected speech or conduct that (2) motivates or substantially causes the defendant's action, which action (3) effectively chills the plaintiff's exercise of his First Amendment right (citation omitted)).

In an attempt to make sense of this case law, one approach is to distinguish cases according to broad types. The great majority of First Amendment retaliation cases arise in the prisoner and public employee contexts. Less typical are those cases, like the one currently before the Court, in which a private citizen alleges that state actors took some action against him in retaliation for his exercise of his First Amendment rights. Unfortunately, even in this subset of cases, there is disagreement about the elements of the claim. The most recent case in this subset to set forth the elements of a First Amendment retaliation claim is *Dougherty*. In that case, the plaintiff alleged that the defendants had revoked a previously issued building permit in retaliation for his exercise of his First Amendment rights. Although the court indicated that there may have been additional protected speech, it specifically noted the plaintiff's allegation that the

permit revocation occurred soon after the defendants' receipt of his opposition papers to their motion to dismiss an action that he had filed in relation to an earlier denial of a permit. *See Dougherty*, 282 F.3d at 91-92. The court held that the circumstances that the plaintiff alleged gave rise to a sufficient inference of a causal relationship between his protected conduct and the defendants' action to withstand a motion to dismiss. *See id.* at 92.

The next most recent case in the subset of private citizen plaintiffs is *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001). *Garcia* involved a student who claimed that the defendants dismissed him from medical school in retaliation for his exercise of his First Amendment rights. The court followed the same formulation of the elements of a First Amendment retaliation claim as did *Gill* but concluded that the plaintiff's assertions did not satisfy the third element of that formulation. *See id.* at 106-07 (quotation and other citation omitted).

After *Garcia*, the next most recent case in this subset is *Curley*. The facts of that case are more analogous to those of the instant action than are those of either *Dougherty* or *Garcia*. The plaintiff in *Curley* alleged that the defendants arrested him in retaliation for comments that he had made while campaigning for municipal office about a police cover-up and failure to discipline. *See Curley*, 268 F.3d at 72-73. The court found that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the existence of probable cause to arrest him negated the second element of such a claim and because the fact that the plaintiff continued his campaign and later campaigned for another municipal office negated the third, "chilling," element of the claim. *See id.* at 73.

*Curley* is distinguishable from *Dougherty* and *Garcia*. All the Second Circuit cases that

-14-

the Court has found involving a private citizen plaintiff who alleges that the defendant arrested

him in retaliation for his exercise of his First Amendment rights have articulated the same

formulation of the elements of a First Amendment retaliation claim as did *Curley*.  *See Kerman*

*v. City of N.Y.*, 261 F.3d 229, 241-42 (2d Cir. 2001) (citation omitted); *Connell v. Signoracci*,

153 F.3d 74, 79 (2d Cir. 1998) (citations omitted).  Although it might be difficult to explain the

distinction between private citizen arrestee plaintiff cases and the other private citizen plaintiff

cases, the distinction is present in the case law.  Therefore, the Court will follow the *Curley*

formulation of the elements of a First Amendment retaliation claim.[6]

    The only challenge[7] that Defendants currently make to Plaintiff's First Amendment

retaliation claims is that he fails to allege that they prevented him from filing a compliant, i.e., he

fails to allege that Defendants' actions effectively chilled him from exercising his First

Amendment rights.  However, this challenge reads Plaintiff's claims too narrowly.  Two distinct

forms of speech are at issue in Plaintiff's first two causes of action.  Plaintiff's first cause of

action alleges that he verbally complained about Defendants' actions during the course of their

---

    [6] The only Second Circuit case that Plaintiff cites in support of his First Amendment
retaliation claims is *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).  *Gagliardi*
applies the same formulation of the elements of the claim as does *Dougherty*.  *See id.* at 194
(quotation and other citations omitted).  However, *Gagliardi*, like *Dougherty*, is a private citizen
zoning dispute case rather than a private citizen arrestee case.

    [7] It is possible that Plaintiff's conduct in criticizing Defendants' actions during the course
of their arrest of Paredes may not be protected activity.  If the allegations in Defendant
Hennessey's affidavit in support of the complaint information are true, Defendants likely had
probable cause to arrest Plaintiff for Obstructing Governmental Administration and, thus, their
threat to arrest him on that charge was privileged.  *See* Dkt. No. 1 at ¶ 48.  However, since
Defendants have not raised the issue of whether Plaintiff's conduct was privileged, and the Court
must accept the allegations in Plaintiff's complaint as true, the Court cannot address this issue at
this time.

arrest of Paredes.  From Plaintiff's second cause of action, it may be reasonably inferred that he

also desired to file a formal complaint about Defendants' actions after the arrest incident.  With

respect to the second cause of action, Plaintiff has not alleged that Defendants' actions

effectively chilled him from filing a complaint.  Therefore, Plaintiff's second cause of action

fails to state a First Amendment claim.  Accordingly, the Court grants Defendants' motion to

dismiss the First Amendment claims in Plaintiff's second cause of action for failure to state a

claim.

However, with respect to Plaintiff's first cause of action, the Court finds that it may

reasonably infer from the complaint that Defendants' conduct effectively chilled Plaintiff's

speech.  The relevant allegations are:

> 24. Plaintiff then crouched down and told the officers that they were "over the top" and that they were "out of control" or words to that effect.
> 25. Plaintiff did this because the police officers were brutalizing Paredes.
> 26. Officer Mullen told Claimant to get back.
> 27. Claimant complied by stepping back.
> 28. Officers Mullen and Hennessey then continued to punch Paredes on the back after Paredes was subdued.
> 29. Plaintiff told the officers again that they were "over the top" or words to that effect.
> 30. Officer Mullen then told the Plaintiff that if he didn't stop, he would be arrested for Obstructing Governmental Administration.
> 31. Plaintiff stopped speaking to the officers.

*See* Dkt. No. 1 at ¶¶ 24-31.  Accordingly, since Plaintiff has sufficiently alleged that Defendants'

(or at least Defendant Mullen's) actions effectively chilled his exercise of his First Amendment

rights, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 First Amendment

claims in his first cause of action for failure to state a claim.

-16-

### 5. *Plaintiff's § 1985(3) claims*

Defendants have asserted three bases for the dismissal of Plaintiff's § 1985(3) claims.

First, they argue that Plaintiff, as a white person, lacks standing to assert a § 1985(3) claim.

Second, they contend that Defendants, as agents or employees of a corporate entity, by

definition, may not conspire with one another.  Finally, they assert that Plaintiff's factual

allegations are insufficient to state a conspiracy claim.

### i. *standing*

Despite the age and extensive use of § 1985(3), case law contains little discussion of the

question of who has standing to assert a claim under that statute.[8]  However, the Court finds that

---

[8] The parties have cited conflicting precedents, none of which are binding on this Court. Defendants cite two cases for the proposition that a plaintiff asserting a § 1985(3) claim must himself be a member of a class that the statute protects: *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 692 (S.D.N.Y. 1996) (citations omitted); *McLoughlin v. Altman*, No. 92 Civ. 8106, 1993 WL 362407, *6 (S.D.N.Y. Sept. 13, 1993) (citation omitted).  Although *McLoughlin* cites *Griffin v. Breckinridge*, [403 U.S. 88, 102,] 91 S. Ct. 1790, 1798 (1971), for the proposition that "a claimant must show, among other things, that she belonged to the type of class that is protected by that statute," *McLoughlin*, 1993 WL 362407, at *6, it does not appear that *Griffin* stands for such a proposition.  Likewise, although *Puglisi* discusses several other cases, when it holds "that plaintiff cannot bring this § 1985(3) claim because . . . plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination[,]" *McLoughlin* is the only case that the court cited that supports this holding. *Puglisi*, 947 F. Supp. at 692.

The cases upon which Plaintiff relies are also suspect.  He contends that a white person who has sought to vindicate the rights of members of a racial minority and against whom the defendants conspire has standing to assert a § 1985(3) claim.  He cites three primary cases to support this proposition: *Maynard v. City of San Jose*, 37 F.3d 1396, 1403-04 (9th Cir. 1994) (citations and footnote omitted); *Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 216 (E.D.N.Y. 1996) (citing *Maynard*); *Bryant v. Polston*, No. IP 00-1064-C-T/G, 2000 WL 1670938, *7 (S.D. Ind. Nov. 2, 2000) (citing *Maynard*).  In *Maynard*, the Ninth Circuit sought to apply the law of that circuit which provided that "[p]laintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined 'require[s]
(continued...)

the case law provides sufficient guidance to answer the question currently before it: whether a non-minority person who alleges that he was injured by a conspiracy that aimed to deprive minority persons of the equal protection of the law has standing to assert a § 1985(3) claim.

The Supreme Court has discussed the statute's purpose: "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters.  The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983).  This statutory purpose implies that, if a white person who sought to vindicate the rights of members of a racial minority were injured by a conspiracy that aimed to deny members of that racial minority of the equal protection of the laws, he would have standing to assert a § 1985(3) claim.

At least two Courts of Appeals have expressly held that a plaintiff asserting a § 1985(3) claim need not himself be a member of a class that the statute protects.  *See Cutting v. Muzzey*, 724 F.2d 259, 260 (1st Cir. 1984) (holding that a non-Italian had standing to assert a § 1985(3) claim against members of a town planning board who allegedly conspired to deprive Italians of access to housing); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1244 (3d Cir.

---

§(...continued)
and warrant[s] special federal assistance in protecting their civil rights.'"  *Maynard*, 37 F.3d at 1403 (quotations and other citation omitted).  The court reasoned that, because Title VII "grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices" and "to all employees – regardless of race – who are subjected to retaliation for assisting in the investigation of discriminatory employment practices," such persons may have standing to assert a § 1985(3) claim.  *Id.* (citation omitted).  The plaintiff in *Maynard* had alleged that his employer and other defendants had retaliated against him for complaining about discriminatory hiring practices.  *See id.* at 1399-1400.  Since it does not appear that the Second Circuit has articulated a general statement of the requirement for standing under § 1985(3), the Court does not find *Maynard* persuasive.

-18-

1978) (*en banc*) ("[M]embers of a conspiracy to deprive women of equal rights are liable under § 1985(3) to persons who are injured in furtherance of the object of the conspiracy, whether male or female."), *vacated on other grounds*, 442 U.S. 366 (1979).[9]  Although the Second Circuit has not addressed whether a white person may have standing to assert a § 1985(3), the Court finds that, in light of the discussion in *Scott*, the holdings of *Cutting* and *Novotny* are persuasive. Therefore, the Court concludes that the fact that Plaintiff is white does not, in and of itself, bar him from asserting a § 1985(3) claim.  Consequently, since Plaintiff has alleged that a conspiracy whose object was to deprive the constitutional rights of a member of a racial minority injured Plaintiff while he was seeking to vindicate those rights, the Court finds that he has adequately alleged standing for his 42 U.S.C. § 1985(3) claim.

### ii. intra-corporate conspiracy doctrine

"'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[]'" while acting within the scope of their employment.  *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004) (quotations and other citations omitted); *see Crudele v. City of N.Y. Police Dep't*, No. 97 Civ. 6687, 2004 WL 1161174, *5 (S.D.N.Y. May 24, 2004) (citations omitted). Although courts first applied this doctrine to cases involving public corporations, they have

---

[9] The Supreme Court vacated *Novotny* because the plaintiff in that case alleged that the conspiracy that injured him had the goal of depriving women of their Title VII rights.  The Court held that, because allowing a plaintiff to base a § 1985(3) cause of action upon rights that Title VII created would circumvent the procedural requirement that Congress had built into Title VII, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  *Novotny*, 442 U.S. at 378.  Since the Fourth Amendment creates the rights of Paredes of which Plaintiff alleges Defendants conspired to deprive him, the Court's holding does not bar Plaintiff's action.

subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees. *See County of Nassau*, 345 F. Supp. 2d at 304 (citation omitted); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) (quotation omitted). "However, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.'" *County of Nassau*, 345 F. Supp. 2d at 304-05 (quotation omitted); *see Stoner v. N.Y. City Ballet Co.*, No. 99 Civ. 0196, 2002 WL 523270, *9 (S.D.N.Y. Apr. 8, 2002) (quotation and other citation omitted).

Individual Defendants are officers of Defendant City. *See* Dkt. No. 1 at ¶¶ 7-9. Plaintiff's allegation that at the time that individual Defendants "conspired to violate Plaintiff's civil rights and committed acts in furtherance of such conspiracy, they were acting as police officers for the City of Syracuse[]" is presumably an admission that individual Defendants were acting within the scope of their employment. *See* Dkt. No. 1 at ¶ 79.

Nonetheless, Plaintiff contends that the personal interest exception applies. "[T]hat exception applies where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose.'" *Everson v. N.Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (quotation and other citation omitted); *see Salgado v. City of N.Y.*, No. 00 Civ. 3667, 2001 WL 290051, *9 (S.D.N.Y. Mar. 26, 2001). Plaintiff has not alleged that individual Defendants had a personal interest in their alleged conspiracy. *See* Dkt. No. 1 at ¶¶ 77-83. In his motion papers, Plaintiff concedes that he "does not allege Defendants' personal stake in their bias against Plaintiff or Paredes . . . ." *See* Dkt. No. 15 at 14. However, he contends that he has "allege[d] sufficient facts to infer that the Defendants were motivated by personal gain in silencing Plaintiff about what he witnessed concerning their brutality and/or

misconduct in subduing and arresting Paredes and preventing Plaintiff from filing a complaint about such misconduct." *See id.* at 14-15 (citations omitted).  He further argues that "the complaint alleges sufficient facts to infer that Defendants' employment opportunities and interest in not answering a complaint about their misconduct was Defendants' personal stake or interest in participating in the conspiracy." *See id.* at 15.  However, since Defendant City arguably has the same general interest, Plaintiff's allegations do not give rise to a reasonable inference that individual Defendants' interests in the alleged conspiracy were distinct from those of Defendant City.

Accordingly, since the intra-corporate conspiracy doctrine applies, the Court grants Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim.[10]

### 6. Plaintiff's common law malicious prosecution claims

> In order to recover for malicious prosecution, a plaintiff must establish four elements: that a criminal proceeding was commenced; that it was terminated in favor of the accused; that it lacked probable cause; and that the proceeding was brought out of actual malice.

*Cantalino v. Danner*, 96 N.Y.2d 391, 394-95 (2001) (citations omitted).  Defendants argue that a dismissal in the interest of justice of an accusatory instrument pursuant to New York Criminal Practice Law § 170.40 cannot constitute a favorable termination.  However, Defendants only cite pre-*Cantalino* case law to support their argument.  *Cantalino* directly addressed "whether the dismissal of criminal charges against plaintiff in the interest of justice constituted a termination in her favor."  *Id.* at 395.  It expressly rejected "a per se rule that a dismissal in the interest of

---

[10] Since the Court concludes that the intra-corporate conspiracy doctrine applies, it will not address Defendants' alternative argument that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

justice can never constitute a favorable termination," and held that

> the question is whether, under the circumstances of each case, the
> disposition was inconsistent with the innocence of the accused.  A case-
> specific rule is particularly appropriate for dismissals in the interest of
> justice, since the trial court is required to state on the record its reasons for
> dismissing the criminal charges . . . .

*Id.* at 396 (internal citation omitted).  Unfortunately, in this case, the state court did not state on

the record its reasons for dismissing the charges.  *See* Dkt. No. 9 at 2.  Furthermore, even if the

state court had stated its reasons on the record, that record is not part of Plaintiff's pleadings.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's common law malicious

prosecution claims for failure to state a claim.

### 7. Plaintiff's common law libel claim

Defendants argue (1) that Plaintiff has failed to comply with New York Civil Practice

Law and Rules § 3016(a)'s requirement that a complaint asserting a claim for libel or slander set

forth the particular words complained of and (2) that, if the Court dismisses all of Plaintiff's

federal claims, it should decline to exercise jurisdiction over his state claims.

Since federal law governs the procedural issues in this case, "'the mode of pleading

defamation is governed by Rule 8, Fed. R. Civ. P.'"  *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d

Cir. 1986) (quotation omitted).  Therefore, the heightened pleading requirement of New York

Civil Practice Law and Rules § 3016(a) does not apply to this action.  *See Silverman v. City of

N.Y.*, No. 98-CV-6277, 2001 WL 218943, *8 (E.D.N.Y. Feb. 2, 2001) (quotation and other

citation omitted).  The allegations of libel in Plaintiff's complaint satisfy Rule 8's requirements

of "a short and plain statement of the claim" and "simple, concise, and direct" allegations.  Fed.

R. Civ. P. 8(a), (e)(1); *see* Dkt. No. 1 at ¶¶ 47-49, 94-96.  Furthermore, the Court has not

dismissed all of Plaintiff's federal claims.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's libel claim for failure to state a claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint for insufficient service of process is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City of Syracuse for failure to sufficiently allege municipal liability is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his second cause of action is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's common law malicious

-23-

prosecution claims for failure to state a claim is **DENIED**; and the Court further

     **ORDERS** that Defendants' motion to dismiss Plaintiff's common libel claim for failure to state a claim is **DENIED**.

**IT IS SO ORDERED.**[11]

Dated: June 20, 2005
     Syracuse, New York

                                      _____

                                    Frederick J. Scullin, Jr.
                                    Chief United States District Court Judge

---

[11] The following claims of Plaintiff remain in this action: (1) § 1983 claims for denial of First Amendment rights against Defendants City, Mullen, and Hennessey, alleging that these Defendants arrested him for speaking to Defendant officers about their conduct in arresting a third-party; (2) § 1983 claims for failure to train against Defendant City; (3) common law malicious prosecution claims against all Defendants; (4) a common law libel claim against Defendant Hennessey; and (5) a claim for attorney's fees pursuant to 42 U.S.C. § 1988.